**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

    Plaintiff,

 v.

L<small>AL</small> B<small>HATIA</small>,

    Defendant.

No. CR 05-0334 SBA

**ORDER**

[Docket Nos. 262, 263]

Before the Court is defendant Lal Bhatia's motion to dismiss [Docket No. 262] the criminal indictment against him based on the doctrines of collateral estoppel and res judicata. Bhatia has also filed a motion to submit a brief in excess of the 25 page limit [Docket No. 263]. For the reasons that follow, the motion to dismiss is DENIED, and the motion to file in excess of the page limit GRANTED.

**B<small>ACKGROUND</small>**

Lal Bhatia is charged with wire fraud (18 U.S.C. § 1343) and money laundering (18 U.S.C. § 1957(a)) based on events surrounding negotiations for loans to fund large real estate development projects in Florida and Texas. Bhatia is scheduled to go to trial on October 15, 2007.

Bhatia's arguments in his motion to dismiss rest almost entirely on an order dismissing him from a civil suit in Texas several years ago. In that case, Federal District Judge Lynn Hughes, of the Southern District of Texas, dismissed Bhatia with prejudice from the civil action. Kapoor Decl. Ex. 24. The order provides no reason or explanation why the dismissal was with prejudice. *Id.*

Bhatia now claims that, under the doctrines of either res judicata or collateral estoppel, or both, the Government is estopped from pursuing the criminal charges against him because many of the same issues and claims in the present indictment have already been resolved in Bhatia's favor in the prior civil suit in Texas. *See* Docket No. 262. The Government argues that the two cases are different and that nothing in the prior case impedes its ability to pursue this criminal action. *See* Docket No. 265.

On October 14, 2004, a Texas corporation sued Bhatia in an unrelated civil action in the United

States District Court for the Southern District of Texas. Kapoor Decl. Ex. 2 at 1. The plaintiff, a company called Inderra Houston, LP (Inderra), alleged a host of claims against Bhatia and eight other defendants, including breach of contract, breach of fiduciary duty, negligence, civil conspiracy, and fraud. *Id.*

Inderra's allegations sprang from its protracted efforts to obtain financing for a large-scale real estate project based near Houston, Texas. After contacting various people and companies for the purpose of securing a $105 million dollar loan for the project, Inderra officials met with Bhatia, his co-defendant Marzban Mody, and other people associated with Wolfe & Turner Investments, Inc. (Wolfe & Turner), a corporation doing business in California and Nevada that held itself out as a broker and lender involved in large real estate development projects. Kapoor Decl. Ex. 2 at 6-8; *see* Docket No. 1, Affadavit at 3.

Based on representations that Wolfe & Turner worked regularly with well-funded investment companies worldwide, Inderra officials began negotiations with Bhatia to secure funding for their project. At the same time, Bhatia was also communicating with Gerry Florent, an officer of a Florida-based real estate development corporation that, like Inderra, was seeking a large loan for a hotel construction project.[1] *See* Docket No. 1, Affadavit at 5-6. The name of this Florida company is Carlton Orlando, LLC. *Id.*

The negotiations between Bhatia, Inderra, and Carlton Orlando culminated in a face-to-face meeting at a Las Vegas hotel with a "Sir Richard Benson," an alleged British businessman who purported to run a transnational development company with billions of dollars in assets. In addition to Benson, Bhatia, officials from Inderra and Carlton Orlando, several attorneys and officers associated with the loans joined in the meeting. *See* Docket No. 262 at 6. Some of these people were named as defendants in the Texas civil suit. Kapoor Decl. Ex. 2.

After the meeting in Las Vegas, officials at Inderra and Carlton Orlando were assured that their loans would be approved, so they moved forward with honoring their obligations under the loan

---

[1] Gerry Florent was also named as a defendant in the Texas civil suit for his role in helping to broker the transaction between Wolfe & Turner and Inderra. Kapoor Decl. Ex. 2 at 5-9.

agreements. An important part of these agreements between Bhatia's company, Wolfe & Turner, and Inderra and Carlton Orlando, required the borrowers to deposit a "loan commitment fee" in Wolfe & Turner's bank account before any loan funds were released. Kapoor Decl. Ex. 2 at 8. Inderra agreed to deposit 1.5 percent of the loan, or $1,575,000; Carlton Orlando agreed to deposit $825,000. *Id.*; *see* Docket No. 1, Affadavit at 10. In its complaint filed in Texas, Inderra claimed that no loan funds were ever released for the project, and that it never received a refund of its loan commitment fee. Kapoor Decl. Ex. 2 at 9. The complaint also alleged that "Sir Richard Benson" was a fraud and the company he supposedly ran, Sherwin and Noble Limited, had no assets and never intended to fund any loans. Kapoor Decl. Ex. 2 at 7-9.

On April 6, 2005, the plaintiff Inderra filed its first amended complaint alleging five causes of action against Bhatia: fraud, breach of the duty of good faith/breach of fiduciary duty, negligence, breach of contract, and civil conspiracy. Kapoor Decl. Ex. 2. On November 15, 2005, after parties on both sides of the Texas civil suit had filed a variety of different motions, Inderra moved to dismiss Bhatia without prejudice from the complaint, stating simply that it "no longer wishe[d] to pursue its claims . . . at th[at] time." Kapoor Decl. Ex. 23.

Two days later, on November 17, the Texas district court entered a final judgment dismissing Bhatia *with prejudice* from the civil suit. Kapoor Decl. Ex. 24 (emphasis added). The order provides no facts or reasoning explaining why the dismissal was with prejudice rather than without as requested. *Id.*

Bhatia now claims that, since the Texas district court dismissed him with prejudice from the civil suit, the doctrines of res judicata and collateral estoppel prevent the Government from pursuing the criminal charges in the present case. *See* Docket No. 262. The questions before this court are whether the doctrines of res judicata or collateral estoppel apply to this criminal action, and whether one element of the wire fraud charges, specifically that Mr. Bhatia's representations were "material," is sufficiently outlined on the face of the indictment.

**LEGAL STANDARDS**

The Federal Rules of Criminal Procedure state that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(2). The advisory committee notes to this provision observe that among the motions that may be heard under Rule 12(b)(2) are issues related to former jeopardy, former acquittal or former conviction. FED. R. CRIM. P. 12(b)(2) advisory committee's note. The doctrines of res judicata and collateral estoppel fall under these categories. *See* FEDERAL PROCEDURE § 22:999 (2006).

**ANALYSIS**

The doctrines of res judicata and collateral estoppel, while interwoven, each contain distinct elements that must be satisfied for one or the other to apply. The United States Supreme Court explains that

> "Res judicata" is the term traditionally used to describe two discrete effects: (1) what we now call claim preclusion (a valid final adjudication of a claim precludes a second action on that claim or any part of it) and (2) issue preclusion, long called "collateral estoppel" (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim).

*Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233, n.5 (1998) (citations omitted).

Both doctrines are rooted in civil law but have been held applicable to criminal cases. *Yates v. United States*, 354 U.S. 298, 335 (1957), *overruled on other grounds*, 437 U.S. 1 (1978) (collateral estoppel); *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1361 (9th Cir. 1987) (collateral estoppel); *United States v. Cejas*, 817 F.2d 595, 598 (9th Cir. 1987) (res judicata and collateral estoppel); *Hernandez v. United States*, 370 F.2d 171, 172-173 (9th Cir. 1966) (res judicata); *Cosgrove v. United States*, 224 F.2d 146, 150 (9th Cir. 1955) (res judicata). The United States Supreme Court views the application of collateral estoppel to criminal cases as an embodiment of the Double Jeopardy Clause of the Fifth Amendment. *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). The doctrine "is not made inapplicable by the fact that this is a criminal case, whereas the prior proceedings were civil in character." *Yates*, 354 U.S. at 335.

4

**1.      Res Judicata**

The doctrine of res judicata applies when there exists between two separate cases (1) an identity of claims; (2) identity or privity between parties in both cases; and (3) a final judgment on the merits in the first case. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002); *Western Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189 (9th Cir. 1997). All three of these essential elements must be shown for res judicata to apply. 50 C.J.S. *Judgments* § 703 (2007).

      **a.      Identity or Privity between Parties**

The most difficult barrier for Bhatia to overcome is showing an identity or privity between Inderra in the Texas civil case and the Government present criminal action. Bhatia claims that, while the parties in both the present indictment and the Texas civil case are not identical, they worked so closely together as to become "privies." *See* Docket No. 262 at. 24-32, 36. In defining the word "privity" in the context of res judicata, both parties refer to *In re Schimmels*, 127 F.3d 875 (9th Cir. 1997), which explains that privity "is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *Id.* at 881 (quoting *Southwest Airlines Co. v. Texas Int'l Airlines, Inc*., 546 F.2d 84, 94 (5th Cir. 1977)). The defendant properly explains that federal courts have recognized several relationships close enough to trigger preclusion:

> First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.

*Id.* at 95.

In this case, the defendant makes no argument that a property interest existed between the Government and the first plaintiff, Inderra. Nor were the Government's interests "represented adequately" by the prior civil suit since, as the Court in *Standefer v. United States,* 447 U.S. 10, 25 (1980) (citations omitted), explains:

> The purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant. The public interest in the accuracy and justice of criminal results is greater than the concern for

5

judicial economy professed in civil cases. . . .

There is no evidence that Inderra, the plaintiff in Texas, had any interest in the "enforcement of the criminal law." Its only interest was in vindicating its own rights by recouping the financial losses it had suffered.

Bhatia relies on his belief that the Government "controlled" the prior civil suit because of its participation in meetings and depositions involving the officers of Inderra. *See* Docket No. 262 at 25-26. Such participation, the defendant argues, proves the Government had a "laboring oar" in the Texas controversy. *See* Docket No. 262 at 31; *Drummond v. United States*, 324 U.S. 316, 318 (1945). Such an oar can bind the United States when it is not formally a party to a prior suit. *Id.*

The defendant directs the court's attention to *Montana v. United States*, 440 U.S. 147, 155 (1979), where the Supreme Court reasoned that the Government held a "laboring oar" in the prior controversy because the United States, among other acts, paid the attorneys' fees and costs of the prior suit, reviewed and approved the prior suit, directed the filing of notice of appeal and appeared as *amicus* before the Montana Supreme Court.

None of the facts outlined by the *Montana* Court even remotely resemble the Government's role in the prior civil action in Texas. While FBI agents did on several occasions instruct officers at Inderra on how to respond when interacting with the defendant, this was done to further the Government's own investigation and hardly amounts to significant "control" of the entire civil suit. *See* Docket No. 262 at 26-27. According to the defendant's approach to party privity under res judicata, any time a Government agent interviews the victim of a crime who has previously pursued a civil remedy, the Government would be precluded from ever filing an indictment. Such shackles around the hands of law enforcement would not only create myriad opportunities for criminal schemes to evade prosecution but would obfuscate the manner and extent to which police officers could interact with victims of crimes without hamstringing future indictments. Such a view is both unreasonable and unsupported by existing law.

Aside from the contact between the Government and the first plaintiff, the defendant offers little evidence of privity or identity of parties in both cases. At least six defendants in the first action are not

named at all in the criminal indictment.[2] Two of the defendants in the present case, Henri Berger and Steven Shelton, appear nowhere as parties in the first case. *See* Docket No. 1; Kapoor Decl. Ex. 2. The only connection that exists between the parties of both cases can be found in periodic discussions between Inderra officials and Government agents. For the reasons stated above, these discussions fall far short of privity. Because Bhatia fails to establish an identity or privity of parties in the two cases, his invocation of the doctrine of res judicata fails.

Moreover, a primary purpose of the doctrine of res judicata is to prevent "vexatious litigation." *Brown v. Felson*, 442 U.S. 127, 131 (1979). There is no evidence of "vexatious litigation" in the Government's actions as they relate to the prior civil suit, and the defendant points to none.

### b. Identity of Claims

Although Bhatia has not established one necessary prong of the res judicata test, for the sake of thoroughness, the Court will further analyze the other two prongs. Bhatia also argues that res judicata applies to the criminal matter at bar because the charges are virtually identical to those dismissed in the Texas civil matter in November 2005. *See* Docket No. 262 at 33-39. The Government dismisses this argument in one sentence, stating that res judicata is inapplicable simply because the causes of action in the two cases are different. *See* Docket No. 265 at 3. Such summary dismissal is premature because the analysis to determine when two causes of action qualify as the "same" for res judicata purposes requires a four-step process. It must be determined (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007); *Constantini*

---

[2] These six defendants are Gerry Florent, Advantis Real Estate Services Company, the St. Joe Company, Wendy Yurgo, Jean Batman and Duane Morris, LLP. In his reply, the defendant points out that Gerry Florent, a defendant in the first case, was the only officer of Carlton Orlando, the corporation put forth as a "victim" in the present indictment. *See* Docket No. 266 at 7. For this reason, the defendant argues, the prior civil action should bar the *entire* indictment. *Id.* (emphasis original). The defendant has not demonstrated clearly how a party that is a defendant in one case and a victim in another can act as a bar for estoppel purposes.

7

*v. Trans World Airlines*, 681 F.2d 1199, 1201-1202 (9th Cir. 1982).

Bhatia focuses on the evidentiary and "nucleus-of-facts" prongs of the same-claim test but fails to address how his "rights" in the prior judgment would be impaired by the Government's prosecution. *See* Docket No. 262 at 37. In the prior case, the Texas-based corporation Inderra sued Bhatia for breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, fraud, and negligence. The defendant's rights as to these claims, which were dismissed with prejudice, are specific to Inderra and have little to do with a criminal indictment by the United States alleging wire fraud and money laundering. These two federal crimes have their own sets of elements entirely distinct from the civil causes of action alleged in the prior case.[3]

Additionally, in arguing that both cases involve the same evidence and same nucleus of facts, the defendant overlooks the role of Carlton Orlando, the Florida-based company created to develop a large hotel in Orlando, Florida. A significant portion of the Government's evidence against Bhatia rests upon information gathered from Carlton Orlando. *See* Docket No. 1, Affadavit at 5-6. Yet none of this same information was used by Inderra as a plaintiff in the prior civil suit in its pursuit of claims against Bhatia.

For these reasons, the claims in the two separate cases fail the "same-claims" test, which forecloses the application of res judicata to the criminal indictment.

### c. **Final Judgment on the Merits**

The defendant argues that a dismissal with prejudice is equivalent to a final determination on

---

[3] Title 18 U.S.C. § 1343 in its entirety reads: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." 18 U.S.C. § 1957(a) reads: "Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b). Although the federal wire fraud statute and the Texas common-law charge of fraud contain some elements that overlap, this will be discussed below in the collateral estoppel analysis.

the merits. *See* Docket No. 262 at 23. The Government does not address this issue because it concludes res judicata is inapplicable for another reason, namely, because the claims are different in each case. *See* Docket No. 265 at. 3.

The Ninth Circuit generally agrees that a dismissal with prejudice is a phrase often used interchangeably with the phrase "final judgment on the merits." *Stewart*, 297 F.3d at 956; *see Leon v. IDX Systems Corp.*, 464 F.3d 951, 962 (9th Cir. 2006). Although the judge in the civil suit gave no reason for his decision, it is clear that the order dismissed Bhatia with prejudice. In the Ninth Circuit, such a dismissal is viewed as a final judgment on the merits and thus this element of the res judicata inquiry is satisfied. However, as previously discussed, Bhatia has not established the other two elements of res judicata and cannot therefore rely on it to dismiss the criminal indictment against him.

## 2. Collateral Estoppel

Collateral estoppel, or "issue preclusion," refers to the common-law doctrine that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between *the same parties* in any future lawsuit." *Ashe*, 397 U.S. at 443 (emphasis added); *see also United States v. Arnett*, 327 F.3d 845, 848 (9th Cir. 2003). Having concluded that Inderra and the Government are not parties in privity in the above analysis suffices to show that they are not the "same parties" and therefore collateral estoppel does not apply. Again, for the sake of thoroughness, the Court will proceed despite this fundamental obstacle.

In the Ninth Circuit, collateral estoppel analysis involves a three-step process: (1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;[4] (2) an

---

[4] In some cases the Ninth Circuit has stated that issues being "sufficiently similar" is not enough---the issues must in fact be identical. *See, e.g., Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992) ("the issue at stake must be identical to the one alleged in the prior litigation"); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) (en banc) ("Similarity between issues does not suffice; collateral estoppel is applied only when the issues are identical"). For purposes of this analysis, the Court will apply the less onerous "similar" standard.

examination of the record of the prior case to decide whether the issue was fully litigated in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case. *United States. v. Ford*, 371 F.3d 550, 555 (9th Cir. 2004); *United States v. Schwartz*, 785 F.2d 673, 681 (9th Cir. 1986); *United States v. Hernandez*, 572 F.2d 218, 220 (9th Cir. 1978).

### a. Similarity of Issues

Bhatia's argument centers on the similarities between the allegations of fraud in the prior Texas suit and the charge of wire fraud in the present criminal indictment. *See* Docket No. 262 at 13-16. The defendant makes no claim that collateral estoppel applies to the Government's money laundering charge because none of the elements or issues related to the federal crime of money laundering resembles any of those related to the offenses named in the civil suit.[5] Further inquiry into the federal wire fraud charge and the fraud allegation of the Texas suit is necessary to determine the extent to which the issues related to these separate offenses are similar.

The elements of common-law fraud in Texas are (1) a material representation that (2) was false when made, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the representation was made with the intention that it be acted upon by the other party, (5) the party acted in reliance upon the representation, and (6) the party suffered injury. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy*, 962 S.W. 2d 507, 524 (Tex. 1998). The elements of statutory fraud in Texas are identical to the common law except that it is not necessary to prove that the speaker acted with knowledge. *Brush v. Reata Oil and Gas Corp.*, 984 S.W. 2d 720 (1998); TEX. BUS. & COMM CODE ANN. § 27.01. A plaintiff has the discretion to sue under the statute, common law fraud or both. *Wright v. Carpenter*, 579 S.W. 2d 575, 578 (Tex.

---

[5] A conviction under section 1957 of the money laundering statute requires the Government to prove that the defendant "knowingly" engaged in a financial transaction with the proceeds of unlawful activity, and that he knew the transactions involved criminally derived property. *United States v. Turman,* 122 F.3d 1167, 1169 (9th Cir. 1997). These elements are dissimilar to the elements of the offenses alleged in the Texas suit, namely fraud, breach of fiduciary duty/breach of good faith, negligence, breach of contract and civil conspiracy.

10

Civ. App. 1979). The reliance and materiality elements of the statute and common law are the same. *Fisher v. Yates*, 952 S.W. 2d 370 (Tex. Civ. App. 1997).

The Government is charging Bhatia with statutory wire fraud, which contains three elements: (1) a scheme to defraud, (2) use of the mails or wires in furtherance of the scheme, and (3) the specific intent to defraud. *United States v. Milwitt*, 475 F.3d 1150, 1155 (9th Cir. 2007); *United States v. Bonallo*, 858 F.2d 1427, 1433 (9th Cir. 1988). This last element of wire fraud, the "specific intent to defraud," mirrors the Texas common-law fraud element that a false representation be made "with the intention that it be acted upon by the other party." The defendant argues that this elemental overlap means the issues in both cases are identical.

A criminal, specific intent to defraud, as embodied in the wire fraud statute, is not identical to a common-law intent that a false representation be relied upon. Assuming *arguendo* that the defendant is correct – that one element of the federal wire fraud statute is sufficiently similar to one element of the Texas fraud offense – it does not logically follow that the issues surrounding both offenses are sufficiently similar under the test for collateral estoppel. This is because an *element* of an offense is not the same as an *issue* related to the circumstances under which the offense was committed. Additionally, the element of intent to defraud must be made in a more specific context in federal wire fraud. The fraud must utilize the "wires" of interstate or foreign commerce, a requirement that obviously does not apply to state common law or statutory fraud. For these reasons, the issues in the two cases are not sufficiently similar to satisfy the first prong of the collateral estoppel test. The lack of similarity of issues in both cases precludes the application of collateral estoppel, and, perhaps more importantly, the lack of identical parties or their privies in both actions forecloses the possibility of either claim or issue preclusion.[6]

---

[6] With respect to the "actually litigated" and "necessarily decided" elements of collateral estoppel, the defendant correctly asserts that a dismissal with prejudice is generally viewed as a determination on the merits. *Leon v. IDX*, 464 F.3d 951, 962 (9th Cir. 2006). This is obviously what the phrase means. The question here is whether the a "determination on the merits," also encompasses a court's dismissal with prejudice. This issue is not clear under Ninth Circuit jurisprudence.
The Fifth Circuit subscribes to the view that "[i]f a question of fact is put in issue by the

11

**3.    Materiality**

The defendant's final argument attacks the materiality element in the Government's wire fraud charges and thus centers more on the sufficiency of evidence than on double jeopardy, although the defendant couches his view in the presumption that either res judicata or collateral estoppel apply to this case. *See* Docket No. 262 at 40-44. Since these doctrines are inapplicable, the focus will be on whether the materiality component of the wire fraud offenses are sufficient as outlined in the indictment.

An indictment can withstand a motion to dismiss if it contains the elements of the charged offense in sufficient detail (1) to enable a defendant to prepare a defense, (2) to ensure the defendant that the prosecution is based on facts presented to a grand jury, (3) to enable defendant to plead double jeopardy, and (4) to inform the court of the alleged facts so it can determine the sufficiency of the charge. *United States v. Bernhart*, 840 F.2d 1441, 1445 (9th Cir. 1988); *United States v. Bohonus,* 628 F.2d 1167, 1173 (9th Cir. 1980). The issue in judging the sufficiency of an indictment is whether the indictment adequately informs the defendant of the charge, not whether the Government can prove its case. *United States v. Buckley*, 689 F.2d 893, 897 (1982). The allegations in an indictment are presumed to be true. *Id.*

Bhatia cites *United States v. Halbert*, 712 F.2d 388 (9th Cir. 1983), which describes the standard for materiality as "whether [the representation] is made to induce action or reliance by another." *Id*. at

---

> pleadings, and is submitted to the jury or other trier of facts for its determination, and is determined, that question of fact has been 'actually litigated.'" *Santopadre v. Pelican Homestead & Sav. Ass'n*, 937 F.2d 268, 273 (5th Cir. 1991) (quoting *James Talbott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 (5th Cir. 1971) *cert. denied*, 404 U.S. 940 (1971). Under this standard, no facts or issues in the Texas civil suit were "actually litigated" because Bhatia was dismissed from the suit before a jury was ever impaneled or a bench trial began.
> Neither party cites any authority to shed adequate light on the meaning of "actually litigated" for collateral estoppel purposes. *See* Docket Nos. 262, 265. Bhatia directs the court's attention to a Tennessee district court case, but the facts in that case are inapplicable to this specific inquiry for several reasons. *See* Docket No. 262 at 23-24. *United States v. Estate of Rogers*, 2003 WL 21212749 (E.D. Tenn. 2003), refers to res judicata, not collateral estoppel. Additionally, the case explores a plaintiff's voluntary dismissal with prejudice. In the prior Texas suit associated with the present case, the plaintiff made a motion to dismiss the Bhatia *without* prejudice. It was the court's order that dismissed the defendant with prejudice. While neither party answers the "actually litigated" question, it need not be explored here.

390. The defendant uses this definition in conjunction with the collateral estoppel doctrine to argue that the Government has not shown -- and is precluded from showing -- the element of materiality. *See* Docket No. 262 at 41-43. Even if issue preclusion applied to this case, the defendant's argument fails despite the Odyssean route it takes to address the fairly straightforward, albeit difficult, task of proving insufficiency of evidence because the criminal complaint is adequate.[7]

The words in the indictment, that the defendant "intended to devise a scheme and artifice to defraud owners and officers of Carlton Orlando and Inderra Houston and to induce them to part with money by means of material false and fraudulent representations and promises," are sufficient to inform the defendant of the materiality element of the wire fraud charges against him. *See* Docket No. 1; *see also Bernhart*, 840 F.2d at 1445.

## CONCLUSION

Accordingly, the defendant's motion to dismiss the indictment [Docket No. 262] is DENIED and the motion to file in excess of the page limit [Docket No. 263] is GRANTED.

IT IS SO ORDERED.

September 4, 2007

Saundra Brown Armstrong
United States District Judge

---

[7] The defendant points out that "only one kind of misrepresentation matters – a *material* misrepresentation. *See* Docket No. 262 at 42 (emphasis in original). And later the defendant explains that "the Government bears the burden to prove beyond a reasonable doubt, the falsehood was material, which is an essential element of federal wire fraud statutes." *See* Docket No. 262 at 43. These arguments bear little relevance to the determination of the sufficiency of an indictment and relate more to the fact-finding task of a jury. Odysseus, the legendary Greek figure who is the focus of Homer's *Odyssey*, suffered 11 years of trials and travails before he finally reached home after a circuitous journey following the end of the Trojan War.

13