UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LAL BHATIA,<br><br>    Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No: C 11-4875 SBA<br><br>Related Criminal Action:<br>No. CR 05-00334 SBA<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT HIS CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

    Lal Bhatia ("Bhatia") previously pled guilty to one count each of wire fraud and money laundering, and was sentenced by this Court to a term of 63 months in the custody of the Bureau of Prisons. At the time of sentencing, Bhatia was serving a 48-month sentence imposed by the Honorable Claudia Wilken in another action then pending in this Court styled as <u>United States v. Lal Bhatia</u>, No. CR 04-40071 CW ("<u>Bhatia I</u>") following his conviction by a jury on charges of mail fraud and money laundering.[1]

    The matter is presently before the Court on Petitioner Lal Bhatia's Motion to Vacate, Set Aside or Correct His Conviction and Sentence Pursuant to 28 U.S.C. § 2255. Dkt. 614. Bhatia alleges that his retained attorneys failed to provide him with effective assistance in connection with a global plea offer made by the Government in 2005 to resolve both this action and <u>Bhatia I</u> for an aggregate sentence of four to five years. Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby DENIES the motion for the reasons set forth below.

**I. BACKGROUND**

    The charges in <u>Bhatia I</u> and <u>Bhatia II</u> arise from two separate fraudulent schemes perpetrated by Bhatia. Since the instant motion is based on a proposed global plea

---

[1] For clarity, the instant action will be referred to as "this action" or "<u>Bhatia II</u>."

agreement to simultaneously resolve both cases, the factual and procedural history of each case—as well as various related civil cases initiated by Bhatia—are summarized below.

### A. OVERVIEW OF THE CRIMINAL ACTIONS

#### 1. Bhatia I

In or about 1999, Bhatia devised and executed a scheme to bilk members of his family out of large sums on money by fraudulently inducing them to invest in his company, ABE Technologies ("ABE"). Bhatia told his relatives that ABE was an internet incubator company backed by Allied Group, a multi-billion dollar Swiss entity. He represented that ABE owned patented technology that would revolutionize the internet, and that the value of ABE would increase dramatically after another entity interested in that technology acquired the company. Relying on his representations, Bhatia's aunts, uncles and other relatives collectively purchased over a million dollars' worth of ABE stock. In actuality, ABE had no affiliation with Allied Group, did not own any patented technology and was not an acquisition target. Many of Bhatia's relatives lost a significant amount of their investment. See Bhatia v. United States, No. CR 04-40071 CW, 2009 WL 690810 (N.D. Cal. Mar. 10, 2009) (summarizing the facts underlying the charges in Bhatia I).

On April 15, 2004, the Government indicted Bhatia on eight counts of mail fraud, 18 U.S.C. § 1341, and one count of money laundering, id. § 1957(a). On September 23, 2004, a Superseding Indictment was filed charging him with nine counts of mail fraud and eighteen counts of money laundering. Bhatia I, Dkt. 11. At the time the Superseding Indictment was filed, Bhatia was represented by retained attorneys Sunita Kapoor ("Kapoor") and Douglas Rappaport ("Rappaport"). Id., Dkt. 6. As an experienced criminal attorney, Rappaport took the lead in representing Bhatia, while Kapoor, primarily a civil attorney, assisted Rappaport. See Gov. Response, Ex. G, Dkt. 633-1.

#### 2. Bhatia II

Beginning in or about 2003, Bhatia met with representatives of two entities, Carlton Orlando LLC ("Carlton") and Inderra Houston ("Inderra"), which were interested in obtaining financing for their respective construction projects. These negotiations

culminated in a face-to-face meeting at a private club located in Las Vegas, Nevada, with a wealthy businessman and financier, whom Bhatia represented to be "Sir Richard Benson." Sir Richard Benson was, in actuality, a fictitious character played by co-conspirator Henri Berger. Following the meeting, Carlton and Inderra wired various payments to accounts maintained by Bhatia, as advance fees for securing the financing. After collecting the fees, Bhatia and his co-conspirators continued their scheme by lulling Carlton and Inderra into believing that the loans would be funded shortly, which they never were.

On October 14, 2004, Inderra filed a civil suit in the United States District Court for the Southern District of Texas against various parties, including Bhatia, for fraud, breach of contract and breach of fiduciary duty, among other causes of action. See Inderra Houston v. Gerry Florent, et al., U.S. Dist. Ct., S. Dist. Tex., Case No. H-04-CV-3961 ("the Inderra action"). During the course of the action, various depositions were taken, including those of Ralph Abercia Sr. and Ralph Abercia Jr., who were principals and officers of Inderra. On November 15, 2005, while various motions remained pending, Inderra moved to voluntarily dismiss the action as to Bhatia. On November 17, 2005, the district court dismissed the claims against Bhatia, with prejudice.

On April 22, 2005, while the Inderra civil action was pending, the Government filed a Criminal Complaint in this Court against Bhatia and co-conspirators Henri Berger, Steven Shelton and Marzban Mody, based on their involvement in the above-described fraudulent scheme. Dkt. 1. The Government was represented by Assistant United States Attorney Steven Corrigan ("AUSA Corrigan"). Federal Bureau of Investigations Special Agent Janet Berry ("Agent Berry") was the assigned case agent.

On May 4, 2005, attorney Kapoor entered an appearance on behalf of Bhatia. The Government superseded the Complaint with an Indictment filed in May 26, 2005, which charged Bhatia with three counts of wire fraud, 18 U.S.C. § 1343, and four counts of money laundering, id. § 1957(a). Dkt. 8. Rappaport made his initial appearance on behalf of Bhatia on June 28, 2005. Dkt. 28.

**B. GLOBAL PLEA OFFER**

After two prior continuances, trial in Bhatia I was scheduled to commence on October 31, 2005. Dkt. 21. In anticipation of trial, the Government sent a letter to Rappaport and Kapoor, dated, October 4, 2005, proposing a global offer to resolve the charges in both Bhatia I as well as Bhatia II. Corrigan Decl. Ex. B. Under the terms of the proposed plea agreement, Bhatia was to plead guilty to the mail fraud and money laundering charges in Bhatia I and a wire fraud count in Bhatia II. In turn, the Government would, inter alia, combine the monetary losses from both cases, limit the losses owed to the victims, and agree to a three-level reduction for early acceptance. With a Criminal History Category I, the projected term of imprisonment under the Sentencing Guidelines applicable to the charges in Bhatia I and Bhatia II was estimated to be from 70 to 87 months—subject to further reduction to the extent that Bhatia could offer a cognizable basis therefor. Id. Bhatia's counsel requested that the Government keep the offer open to allow him to meet with his father, who purportedly was travelling from India. Id. However, the Government subsequently learned that Bhatia's father had no intention of visiting the United States. Id. Believing that it had been "duped," the Government, by letter dated November 4, 2005, withdrew its plea offer. Id. Ex. C.

**C. PROCEEDINGS IN BHATIA I**

On December 29, 2005, Rappaport moved to withdraw as counsel for Bhatia. Dkt. 64. Five days later on January 3, 2006, Bhatia added Paul Puri ("Puri") as retained counsel of record and moved to continue the trial date. Bhatia I, Dkt. 67. Though initially denying the motion to continue, Judge Wilken subsequently continued the trial date to February 13, 2006. Id., Dkt. 81, 85, 98, 114. A jury trial was held on February 13 through 28, 2006. Id., Dkt. 353. At trial, Bhatia was represented by Kapoor and Puri and retained attorneys William Houser ("Houser") and Edith Purser ("Purser"). Id. Bhatia's defense was that he never intended to defraud investors, that they were merely upset because their investment failed to provide the expected return, and, in any event, they had prior notice of such risks. Id.

On February 28, 2006, the jury returned with guilty verdicts on each of the twenty-seven counts alleged in the Superseding Indictment. Id., Dkt. 141. On October 23, 2006, Judge Wilken sentenced Bhatia to a term of 48 months in custody as to each count, to run concurrently. Id., Dkt. 176.[2]

On October 30, 2006, Bhatia filed a Notice of Appeal from his conviction and sentence. Id., Dkt. 183. The Ninth Circuit affirmed the judgment on January 23, 2008, and issued its mandate on May 13, 2008. Id., Dkt. 291, 308.

Following his conviction, Bhatia filed a motion under § 2255 to vacate, set aside, or correct his sentence in which he alleged that his four trial attorneys (Houser, Kapoor, Puri and Purser) provided ineffective assistance during the course of trial and by failing to file a motion to suppress. Id., Dkt. 311. No claim was presented regarding the global plea offer. On March 10, 2009, Judge Wilken denied the motion and Bhatia appealed. Id., Dkt. 353, 357. The Ninth Circuit affirmed Judge Wilken's denial of the § 2255 motion on January 31, 2011. Id., Dkt. 386.

During the pendency of his appeal from the denial of his § 2255 motion, Bhatia filed a Petition for Writ of Audita Querela on June 29, 2009, claiming that the Court failed to address one of the arguments in his motion. Bhatia I, Dkt. 364. On September 23, 2009, Judge Wilken denied the petition, which she construed as a motion for reconsideration. Id., Dkt. 372. Bhatia appealed the ruling. Id., Dkt. 372, 375. Judge Wilken denied Bhatia's request for a certificate of appealability on February 11, 2010. Id., Dkt. 377. Bhatia renewed his request for a certificate of appealability with the Ninth Circuit, which denied the request on August 31, 2010. Id., Dkt. 382. Bhatia subsequently applied for leave to file a second or successive § 2255 motion, which the Ninth Circuit denied on October 16, 2012. Id., Dkt. 399.

---

[2] Based on an offense level of 23 and a Criminal History Category of I, Judge Wilken determined that Bhatia was subject to a Guideline range of 46-57 months. Dkt. 116.

### D. PROCEEDINGS IN BHATIA II

#### 1. Motion Practice

Throughout the course of Bhatia II until his change of plea, Bhatia has maintained his innocence of the charges alleged against him. In January 2006, Bhatia filed a slew of motions, including a motion for leave to take the depositions of Gerry Florent and Ralph Abercia, Sr., a motion to dismiss or for a bill of particulars and a motion to suppress statements made by co-defendant Marzban Mody. Dkt. 89, 91, 95. In his motion to dismiss, Bhatia argued that any statements made to Inderra and Carlton were nothing more than business negotiations and therefore were not actionable. Dkt. 89. The Court denied Bhatia's motions on February 6, 2007. Dkt. 112.

On July 24, 2007, Bhatia moved to dismiss the indictment on the ground that the dismissal entered in the Inderra action precluded the Government, under the doctrine of collateral estoppel or res judicata, from pursuing the instant criminal action. The Court denied the motion on September 4, 2007, based on Bhatia's failure to establish privity between Inderra and the Government. Dkt. 275. Bhatia appealed the Court's decision and the action was stayed. Dkt. 357. On September 28, 2008, the Ninth Circuit dismissed the appeal, finding, in a published opinion, that there was no privity between the Government and Inderra. United States v. Bhatia, 545 F.3d 757 (9th Cir. 2008), cert. denied, 130 S.Ct. 127 (2009).

On June 6, 2010, Bhatia filed a motion styled as a Motion to Dismiss Indictment As FBI Agent Berry and AUSA Corrigan's Material Falsehoods Caused the Grand Jury, the Indictment No Longer to be a Grand Jury, the Indictment No Longer to be an Indictment Thereby Giving Rise to the Defendant's Constitutional Right Not to be Tried. Dkt. 486. The crux of the motion, which the Court construed as a motion to dismiss based on prosecutorial misconduct, was that AUSA Corrigan and Agent Berry made material misrepresentations to the grand jury in order to secure the Indictment. Bhatia claimed that the deposition testimony of the Abercias in the Inderra civil action established that another individual, Gerry Florent, alone had deceived them into paying the advance fees. Bhatia

argued that AUSA Corrigan and Agent Berry allegedly knew of this information but failed to communicate it to the grand jury. In addition, Bhatia maintained that he had provided his version of events to AUSA Corrigan, but that he did nothing to correct the record. The Court denied the motion in a written order issued on July 13, 2010. Dkt. 507. Bhatia filed a Notice of Appeal from the Court's order denying of his motion. Dkt. 511. The Ninth Circuit subsequently dismissed Bhatia's appeal for lack of jurisdiction. Dkt. 534.

### 2. Plea Agreement

On July 13, 2010, Kapoor and Puri were permitted to withdraw as counsel of record for Bhatia.[3] On July 22, 2010, the Court appointed CJA panel attorney Dianna Weiss to represent Bhatia. Dkt. 517. On March 17, 2011, Bhatia entered a guilty plea to Count One (wire fraud) and Count Four (money laundering), pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Dkt. 556. As part of his plea agreement, Bhatia agreed to waive his right to appeal his conviction, judgment and any aspect of his sentence. Id. § 4. On September 7, 2011, the Court sentenced Bhatia, consistent with his plea agreement, to the custody of the Bureau of Prisons for a period of 63 months and imposed a special assessment of $200 and restitution in the amount of $1,987,250. Dkt. 597, 604.

## E. RELATED CIVIL ACTIONS

During the pendency of Bhatia I and Bhatia II, Bhatia initiated several civil lawsuits related to the then pending criminal charges. Because the arguments made by Bhatia in those actions provide context to the instant § 2255 motion, the Court briefly summarizes these civil suits below.

### 1. Bhatia v. United States, No. C 08-4208 SBA

On August 4, 2008, Bhatia commenced a pro se mandamus action in the Southern District of Texas against AUSA Corrigan and Agent Berry which sought to enjoin the criminal prosecution in Bhatia II. See Bhatia v. United States, U.S. Dist. Ct., S. Dist. Tex.,

---

[3] From September 4, 2007, to May 19, 2010, Stanley Hilton also served as counsel of record for Bhatia.

Case No. H-08-2408. The pleadings alleged that the Government was foreclosed from prosecuting him on the grounds that the district court in the Inderra action had found that the Abercias were not defrauded and that AUSA Corrigan and Agent Berry had fabricated the charges against him. Bhatia filed the action during the pendency of his appeal to the Ninth Circuit from the Court's order denying his motion to dismiss, in which Bhatia had also argued that the findings of the Texas district court in the Inderra action precluded his prosecution in this action.

The Texas district court transferred the action to this District on September 5, 2008. See No. C 08-4208 SBA. Upon motion of the defendants, the Court dismissed the action for lack of subject matter jurisdiction on November 6, 2008. Id., Dkt. 20. Bhatia appealed and moved to stay the criminal proceeding in Bhatia II pending resolution of the appeal. Id., Dkt. 22, 28. The Court denied the motion for stay. Id., Dkt. 31. Bhatia filed a motion for reconsideration, which was denied. Id., Dkt. 32, 39. On April 20, 2010, the Ninth Circuit affirmed the Court's order of dismissal. Id., Dkt. 33; Bhatia v. United States, 376 Fed. Appx., 2010 WL 1552840 (9th Cir. Apr. 20, 2010). On August 6, 2010, the Ninth Circuit denied Bhatia's petition for rehearing and petition for rehearing en banc. Id., Dkt. 41.

## 2. Bhatia v. Office of the U.S. Attorney, No. C 09-5581 SBA

On November 24, 2009, Bhatia filed a pro se action against the United States Attorney's Office, alleging that AUSA Corrigan and Agent Berry "intentionally and willfully provided the Grand Jury with material inaccuracies, resulting in an indictment returned in criminal case CR-05-00334-SBA [Bhatia II] . . . ." Bhatia v. Office of the U.S. Attorney, No. C 09-5581 SBA, Dkt. 1 ¶ 6. Bhatia alleged that deposition testimony from the Inderra civil action established that Gerry Florent was entirely responsible for the fraudulent scheme and therefore he should be exonerated in Bhatia II. Id. ¶ 10-12; e.g. id. ¶ 11 ("Plaintiff was not culpable for the alleged scheme to defraud as alleged in the [Bhatia II] Indictment, returned by the Grand Jury based on Berry and Corrigan's material inaccuracies."). Bhatia sought damages under the Privacy Act and for emotional distress.

On March 29, 2011, the Court granted the defendants' motion to dismiss. Dkt. 51; Bhatia v. Office of U.S. Atty., Northern Dist. of Cal., No. C 09-5581 SBA, 2011 WL 1298763 (N.D. Cal. Mar. 29, 2011), aff'd 507 Fed. Appx. 649 (9th Cir. Jan. 2, 2013). The Court found that subject matter jurisdiction was lacking due to lack of standing and ripeness, and that even if jurisdiction were present, Bhatia had failed to allege any viable legal claims. Id. The Ninth Circuit affirmed the Court's order dismissing the action. Dkt. 61.

### 3. Bhatia v. Wig, et al., No. C 10-0072 SBA

On January 6, 2010, during the pendency of his appeals from the denial of his § 2255 motion and Petition for a Writ of Audita Querela in Bhatia I, Bhatia filed a 156-page pro se Complaint in this Court against Manmohan K. Wig ("Wig") and Wig Properties, LLC, alleging claims premised on the Racketeer Influenced Corrupt and Organization Act and state law. Bhatia v. Wig, et al., No. C 10-0072 SBA. According to Bhatia, Wig, who is related to him by marriage and had invested in ABE, was, in fact, responsible for the fraudulent scheme for which he was convicted in Bhatia I.

The Complaint alleged five claims for relief grounded on the theory that Wig provided false information to the FBI in order to divert attention away from the Allied Group so that the FBI would instead focus its investigation on Bhatia and his entities. Bhatia alleged that as a result of such alleged misconduct, AUSA Corrigan and Agent Berry "were convinced to corruptly, knowingly and willfully fabricate information, to convince the Grand Jury to return an indictment in case no. CR 04-40071-CW [Bhatia I] . . . charging Plaintiff with mail fraud and money laundering." Id., Dkt. 45 at 1. Bhatia further claimed that when he refused Wig's demand to plead guilty in that case, Wig "once again convinced Berry and Corrigan to falsify information to convince the Grand Jury to indict Plaintiff in a second case no. CR-05-00334 SBA." Id. at 2. He also alleged that after refusing to plead guilty in Bhatia I, Wig convinced AUSA Corrigan and FBI Agent Berry to falsify information to convince the Grand Jury to render an indictment in Bhatia II. Id.

The Court granted summary judgment for defendants, which the Ninth Circuit later affirmed. Bhatia v. Wig, No. C 10-0072 SBA, 2010 WL 3631320 (N.D. Cal. Sept. 14, 2010), aff'd 479 Fed. Appx. 768 (9th Cir. Jul. 11, 2012).

## F. THE INSTANT § 2255 MOTION

Bhatia has now filed a motion under § 2255 claiming that his retained attorneys[4] were constitutionally ineffective by failing to adequately advise him regarding the Government's global plea offer in 2005. Bhatia claims that had he been properly informed as to the "pros and cons" of the proposed plea agreement, he would have accepted it and therefore that his sentence would have been between 70 to 87 months, as opposed to the aggregate 111 month sentence imposed in Bhatia I and Bhatia II.[5]

Accompanying his motion is a twenty-page declaration from Bhatia in which he claims that in 2005, he met with Rappaport and Kapoor to discuss a plea offer made by the Government. Bhatia Decl. ¶ 98, Dkt. 616. Rappaport reported that the Government had offered to recommend a sentence of four to five years if Bhatia entered guilty pleas in both cases. Id. ¶¶ 98, 99. According to Bhatia, Kapoor stated that the plea agreement was "out of the question and a sentence of four or five years was 'unacceptable' and 'ridiculous.'" Id. ¶ 100. Kapoor explained the basis for her opinion, including weaknesses she perceived in Bhatia II, and stated she could not allow Bhatia to plead guilty based upon "fabrications" by the prosecutor and FBI case agent. Id. ¶ 101. Kapoor advised Bhatia that he could obtain a second opinion regarding the propriety of her analysis. Id. ¶ 103.

Following Kapoor's suggestion, Bhatia contacted attorney Paul Puri and provided him with the discovery produced by the Government in both cases. Id. ¶ 104. With Bhatia's permission, Puri spoke with both Kapoor and Rappaport. Id. ¶ 105-112. After reviewing the case files, Puri informed Bhatia that be believed that Bhatia I was "a very

---

[4] Diana Weiss was appointed as CJA counsel for Bhatia in Bhatia II. Attorney Weiss' actions are not at issue in this motion.

[5] Bhatia incorrectly characterizes the plea offer as one for "four to five years," as opposed to the 70 to 87 months sentence actually offered.

- 10 -

winnable case," and that once he was able to establish bias of defense witnesses and their financial motives, "it would be [a] "piece of cake.'" Id. ¶ 113. There is no indication as to what Puri allegedly said, if anything, regarding the global plea offer or Kapoor's analysis. In addition, Bhatia presents no declaration from any of the four retained attorneys who represented him at trial in Bhatia I, or attorney Rappaport, who was then representing Bhatia in both actions and to whom the Government's global offer was made. Nor does Bhatia include any communications he may have had with Rappaport regarding the Government's offer or Bhatia's exposure at trial. The Government opposes the motion on both procedural and substantive grounds. The matter is fully briefed and is ripe for adjudication.

## II. <u>LEGAL STANDARD</u>

Title 28, United States Code, section 2255 permits federal prisoners to file motions to set aside or correct a sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Hamilton v. United States, 67 F.3d 761, 763 (9th Cir. 1995). If a court finds that relief is warranted under § 2255, it must "vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## III. <u>DISCUSSION</u>

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

A claim for ineffective assistance of counsel under the Sixth Amendment is reviewed under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Because of the difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "This requires showing that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To satisfy the second prong under Strickland, petitioner must establish that he was prejudiced by counsel's substandard performance. See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694). Under Strickland, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different." Id. Judicial scrutiny of counsel's performance is "highly deferential." Strickland, 466 U.S. at 689. A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied. See Strickland, 466 U.S. at 697.

### 1. Deficient Performance

A defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012); Missouri v. Frye, 132 S.Ct. 1399 (2012); Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003). To prove ineffective assistance during the plea phase of a prosecution, the defendant "'must demonstrate gross error on the part of counsel . . . .'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)). The question is "not whether 'counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases.'" Id. (quoting McMann, 397 U.S. at 771). The advice must be "so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the plea offer." Id. (alterations and internal quotations omitted). Where, as here, a defendant is represented by multiple attorneys, the defendant must make a particularly strong showing of ineffectiveness because each attorney is in a position to monitor and correct the other's mistakes. United States v. Lloyd, 983 F. Supp. 738, 743 (N.D. Ill. 1997).

At the time the Government made its global plea offer, Bhatia was represented in this case by both Kapoor and Rappaport. As to Kapoor, Bhatia faults her for characterizing the offer as "unacceptable" and "ridiculous," and allegedly opining that the only acceptable

disposition of the action would be the dismissal of the charges with prejudice. Mot. at 2-3. According to Bhatia, Kapoor "unjustifiably" predicated her advice on theories that: AUSA Corrigan and Agent Berry fabricated the charges; the Texas district court in the Inderra had found that the Abercias were not defrauded; Gerry Florent was entirely responsible for any misconduct; and Bhatia had been dismissed with prejudice from the Inderra action. Id.; Bhatia Decl. ¶ 97.

Though not entirely clear, Bhatia appears to suggest that Kapoor's analysis and corresponding belief that he would prevail at trial were misguided, which, in turn, led him to reject the plea offer. As an initial matter, there is no evidence that Bhatia actually rejected the Government's plea offer. Rather, the record shows that Bhatia's counsel had requested that the Government keep the offer open until Bhatia could meet with his father, who was purportedly travelling the United States from India. The Government withdrew the plea offer after learning that Bhatia's father had no plans to visit the United States.[6] Nevertheless, even if the Court were to construe Bhatia's failure to *immediately* accept the plea offer as a rejection, Bhatia fails to demonstrate that Kapoor's analysis amounts to "gross error" or was objectively unreasonable under the circumstances. Moreover, Bhatia's attempt to attribute such strategy to Kapoor is particularly dubious given that Bhatia, acting pro se, relied on the same defense theories in his numerous pro se lawsuits as a basis for seeking to enjoin his prosecution in this case and for bringing criminal and disciplinary charges against AUSA Corrigan and Agent Berry. Bhatia v. Wig, No. C 10-0072 SBA, 2010 WL 3631320 (N.D. Cal. Sept. 14, 2010); Bhatia v. United States, No. C 08-4208 SBA, 2008 WL 4830702 (N.D. Cal. Nov. 6, 2008); Bhatia v. Office of the U.S. Attorney, C 09-5581 SBA, 2011 WL 1298763 (N.D. Cal. Mar. 29, 2011).

Even if Bhatia had made a colorable showing that Kapoor's performance was constitutionally deficient, his Sixth Amendment claim still fails. As an initial matter,

---

[6] In his reply, Bhatia attempts to blame his counsel for providing the false information regarding his father's travel plans. However, there is no evidence that such erroneous information was fabricated by counsel, as opposed to Bhatia himself.

Kapoor expressly advised Bhatia to seek a second opinion regarding her analysis. Bhatia Decl. ¶ 103. Following Kapoor's suggestion, Bhatia sought out and consulted with Puri. Id. ¶ 104.[7] After speaking with both Kapoor and Rappaport, Puri allegedly stated that Bhatia I was "winnable." Id. ¶¶ 107-113. Tellingly, Bhatia omits any information regarding Puri's opinions on Kapoor's strategy in Bhatia II or the proposed plea agreement. Moreover, and particularly important here, Bhatia has made no showing that Rappaport— his other counsel of record at that time—failed to provide him with effective assistance regarding the plea offer. Though Bhatia belatedly argues in his reply that Rappaport erred in failing to challenge Kapoor's "rejection" of the 2005 plea offer, see Reply at 4, the Court does not consider claims that were not presented in the moving papers. See Delgadillo v. Woodford, 527 F.3d 919, 930 n.4 (9th Cir. 2008) (holding that it is improper to raise new grounds for habeas relief in a reply brief). That aside, there is no evidence that Rappaport failed to adequately advise Bhatia regarding the plea offer or that he failed to challenge Kapoor's view that the offer was unacceptable. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (rejecting ineffective assistance of counsel ground based on unsupported allegations).

### 2. Prejudice

As an alternative matter, Bhatia's § 2255 motion fails to demonstrate prejudice under Strickland. To show prejudice resulting from a rejected plea offer, the defendant must show that, but for the counsel's deficient performance, there is a reasonable probability that: (1) "the defendant would have accepted the plea"; (2) "the prosecution would not have withdrawn [the plea] in light of intervening circumstances"; (3) "the court

---

[7] Though Bhatia does not assert in his motion that Puri provided ineffective assistance, his supporting declaration appears to make such a claim. Any putative ineffective assistance of counsel claim against Puri is without merit. The plea offer was made on October 3, 2005, and withdrawn on November 4, 2005. Puri did not appear as counsel of record for Bhatia until April 25, 2006, well after the Government withdrew its plea offer. Dkt. 114. Since Puri was not Bhatia's counsel of record in this action during the relevant time period, any Sixth Amendment claim based on Puri's alleged advice must fail. See United States v. Martini, 31 F.3d 781, 82-83 (9th Cir. 1994) (holding that an ineffective assistance of counsel claim cannot be premised on the actions of an attorney who has been consulted but who is not actually representing the defendant). In any event, Bhatia has not presented sufficient evidence to establish that Puri actions fell below the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

would have accepted its terms"; and (4) "the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S.Ct. at 1385.

Bhatia contends that but for his attorneys' allegedly deficient advice, "he would have pled guilty in 2005" in *both* criminal cases. Mot. at 5. This claim is a non-starter. Because the Government's offer was a global one, Bhatia must necessarily demonstrate that he would have been willing to plead guilty in both this case *and* Bhatia I at the time the offer was made. However, since Bhatia I was assigned to a different judge who sentenced him in October 2006, this Court has no jurisdiction to consider whether Bhatia would have pled guilty in *that* action. Indeed, any effort by Bhatia to revisit any aspect of Bhatia I is foreclosed by decisions of Judge Wilken, the Ninth Circuit and the Supreme Court which barred any further challenge to his judgment and sentence in that case. Moreover, it bears noting that although Bhatia raised numerous ineffective of counsel claims in his failed § 2255 motion filed in Bhatia I, he made no argument that he received inadequate advice regarding the Government's global plea offer. As such, it is transparent that Bhatia's present attempt in *this* case to claim that he would have pled guilty in Bhatia I in 2005 is little more than an improper attempt to make an end-run around his failure to raise such a claim in that action.

The above notwithstanding, Bhatia cannot establish a reasonable probability that he would have accepted the plea offer, as required by Lafler. See 132 S.Ct. at 1385. Bhatia merely states in his motion that he would have accepted the global plea offer but for Kapoor's opinion. Mot. at 5. The Ninth Circuit has held that this type of self-serving statement is insufficient to establish that a defendant would have accepted a previously-made plea offer. See Turner, 281 F.3d at 881 (a "self-serving statement," alone, is insufficient to show prejudice—"[i]f the rule were otherwise, every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer."); see also Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) ("Given appellant's awareness of the plea offer, his after the fact testimony

concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.").

Bhatia's bald assertion that he would have accepted the plea to resolve both this case and <u>Bhatia I</u> without going to trial also is belied by the record. In his companion motions for bail and for discovery filed in this case, for example, Bhatia professes his innocence of the charges alleged against him in both this action as well as <u>Bhatia I</u>. See Dkt. 674, 675. Bhatia relied, inter alia, heavily on purported findings rendered by the Texas district court in the <u>Inderra</u> civil action and contends, as before, that Gerry Florent is solely responsible for the conduct underlying the Indictment in this action.[8] Likewise, Bhatia's discovery motion continued to accuse AUSA Corrigan and Agent Berry of various "falsehoods and misconduct" and claims that Wig was the individual actually responsible for the criminal conduct underlying his conviction in <u>Bhatia I</u>. In view of his steadfast and ongoing claims of innocence, Bhatia cannot credibly assert that he would have accepted the Government's proposed global plea agreement and admitted his guilt to the charges alleged in both cases. Rather, it is plain to the Court that Bhatia's claim of ineffective assistance is little more than an after-the-fact ploy to obtain a reduction of his sentence.[9]

---

[8] Bhatia's reliance on those findings, including his claim that AUSA Corrigan and Agent Berry engaged in misconduct, is particularly ironic given that this is essentially the same rationale that Kapoor allegedly cited for her conclusion that the plea offer was unacceptable.

[9] Bhatia's claim that he was prepared to enter guilty pleas in 2005 is likewise contradicted by filings he made in his other civil actions. In his *verified* pro se Complaint filed against Wig in January 2010, Bhatia alleged that Wig had urged him to accept the Government's global plea offer. Compl. ¶¶ 273-74. Bhatia responded that "he was not going to take any kind of plea agreement and instead will clear his name . . . however long and arduous that journey was." Id. ¶ 275. Having previously made it clear that he had no intention of accepting "any kind of plea agreement," Bhatia is now estopped from asserting that he would have pled guilty if it were not for the advice of his counsel. See <u>Ah Quin v. County of Kauai Dept. of Transp.</u>, 733 F.3d 267, 271 (9th Cir. 2013) (noting that the doctrine of judicial estoppel protects the integrity of the judicial process "by prohibiting parties from deliberately changing positions according to the exigencies of the moment.") (internal quotations omitted).

### B. OTHER CLAIMS

Bhatia contends that in the event the Court finds that "Kapoor's performance was not deficient and that it was only Gerry Florent [who was responsible for defrauding the Abercias]," the Court should reverse his sentence on the grounds of prosecutorial misconduct. Mot. at 6-7. Under the terms of his plea agreement, however, Bhatia waived all claims other than ineffective assistance of counsel. As a result, any claim for prosecutorial conduct has been waived and is procedurally barred. See United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993).

Bhatia also complains that the Government breached the plea agreement by allegedly failing to recommend that he receive a credit for 1,289 days served in connection with Bhatia I. Mot. at 7. He does not specify what provision of the plea agreement contains such a promise, nor has the Court been able to locate one. The Government's promises are set forth in paragraph 8 of the plea agreement, where Bhatia acknowledged that he would receive the following: "a sentence at the low end of the applicable Guideline range, 3 years of supervised release . . . , a $200 special assessment, and $1,987,250 restitution." Plea Agt. ¶ 8. In paragraph 10, Bhatia stated: "I agree that this Agreement contains all of the promises and agreements between the government and me, and will not claim otherwise in the future." Id. ¶ 10. But even if such an agreement existed, which has not been shown, Bhatia's claim is deemed waived under the terms of the plea agreement.

### C. EVIDENTIARY HEARING

Bhatia has not requested an evidentiary hearing in connection with his § 2255 motion, and the Court, in its discretion, finds that none is necessary. See Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988) ("Decisions to hold hearings and conduct discovery . . . are committed to the [district] court's discretion."). A court need not conduct an evidentiary hearing when "the motion and files and records of the case conclusively show that the [petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Because the files and records of this case conclusively show that Bhatia lacks a valid claim for ineffective assistance of counsel, no evidentiary hearing is needed to resolve the motion.

### D. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2). "[T]he showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Here, no reasonable jurist would find the denial of Bhatia's § 2255 motion debatable or wrong. The Court therefore denies Bhatia a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Petitioner's Motion to Vacate, Set Aside or Correct His Conviction and Sentence Pursuant to 28 U.S.C. § 2255 is **DENIED**. The Court declines to issue a certificate of probable cause. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: January 17, 2014

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge